(159 App. Div. 361.)

### McCABE v. CARTER & WEEKES STEVEDORING CO.

(Supreme Court, Appellate Division, Second Department.  November 28, 1913.)

1. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE.
    In an action for the death of a servant, evidence *held* to show that his death was caused by the negligence of a fellow servant.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

2. MASTER AND SERVANT (§ 184*) — NEGLIGENCE OF FELLOW SERVANT — LIABILITY OF MASTER.
    Under Consol. Laws 1909, c. 31, § 200, as amended by Laws 1910, c. 352, making the employer liable when an injury is caused to an employé by reason of defects in the ways, works, or machinery furnished by the master, or by reason of the negligence of any person intrusted with power, the employer is not liable for injuries caused by the negligence of a fellow servant.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 374; Dec. Dig. § 184.*]

3. DEATH (§ 57*)—INJURIES TO SERVANT—ACTIONS—PLEADING.
    Where the complaint, in an action for the wrongful death of a servant, specified the negligence relied on, recovery cannot be predicated on another act of negligence not mentioned in the notice served or in the complaint as limited by the bill of particulars.

    [Ed. Note.—For other cases, see Death, Cent. Dig. § 74; Dec. Dig. § 57.*]

Appeal from Trial Term, Kings County.

Action by Maria McCabe, as administratrix of the estate of Patrick McCabe, deceased, against the Carter & Weekes Stevedoring Com-

pany. From a judgment for plaintiff, and an order denying its motion for new trial, defendant appeals. Reversed and remanded.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

James J. Mahoney, of New York City (George J. Stacy, of New York City, on the brief), for appellant.

Benjamin Reass, of Brooklyn, for respondent.

BURR, J. [1] I think that the judgment entered in this action must be reversed for failure to establish actionable negligence upon the part of defendant. The facts in connection with the accident which resulted in the death of Patrick McCabe are stated in the concurring opinion of the Presiding Justice. The primary cause thereof was the carelessness of a fellow servant of decedent in throwing the hook which was to be fastened into the sling by which the load to be lifted was bound together. Samuel Rourke, a witness called for plaintiff, thus testified:

"Some man * * * threw this hook toward me, and in place of throwing it toward me, he threw it in a slanting direction; that is right, sir. * * * The beam would lay right between both of us *but to one side,* and there would be a space of 12 feet, running from the beam to the aft end of the hatch, and 18 feet across, and the fellow apparently intended to throw the hook across the 18 feet; he apparently intended to throw the hook across the 18 feet, or a portion of it, toward me, when in fact he threw it to the side; that is right. And it caught under the upper flange, the upper flange of this beam, and the beam came out."

[2] If the hook had caught in the "cross-hatch beam" in the regular, usual, and ordinary prosecution of the work then being carried on, and if because of the failure to bolt down this heavy piece of iron it had been lifted out of place and dropped upon decedent, it might have been a question of fact for the jury whether the master should not have foreseen this possible happening, and taken at least the precautionary measure of thus securing it. But such was not the fact. This "beam," weighing 900 pounds, would have remained in its position forever, although unbolted, unless interfered with by some powerful extraneous force. The men had been working in that hatch for four days prior to the accident, and, so far as this "beam" is concerned, might have continued to work there with perfect safety but for the carelessness of the man who threw the hook. Standing upon one side of the opening, measuring 12 feet fore and aft by 18 feet across, and opposite to the gangwayman, instead of throwing it directly across the 18 feet separating them, he carelessly threw it in a diagonal direction, so that, instead of reaching the hands of the gangwayman, it came in contact with the "cross-hatch beam" at the limit of the 12-foot space. Who this man was does not clearly appear, but it was not the superintendent, nor "any person intrusted with authority to direct, control or command any employé in the performance of the duty of such employé." Consolidated Laws, c. 31 [Laws of 1909, c. 36, as amended by Laws of 1910, c. 352), § 200. He was a fellow workman of decedent, and for "any acts or omissions on the part" of such workman defendant is not responsible. With the consent of

plaintiff's attorney, the jury were instructed that such was the rule of law with respect to fellow servants. The learned trial justice, applying this rule to the facts of this case, should have granted the motion to dismiss the complaint upon that ground.

[3] It may not be urged, in order to sustain the judgment, that it was negligence upon the part of Rourke, the gangwayman, to give the signal to start the winch until the hook was safely in his hands. Neither the notice served prior to the commencement of the action, nor the complaint as limited by the bill of particulars, states this as a negligent act, and the case was not submitted to the jury upon any such theory.

The judgment and the order denying the motion for a new trial must be reversed, and a new trial granted, costs to abide the event. All concur; JENKS, P. J., in separate opinion.

JENKS, P. J. I concur. I think that reversal may rest also upon an error in the instructions.

The intestate was killed when in the hold of a ship which was loading by his master, a stevedore. A boom had been attached to a cargo mast, and at the top of this boom there was a block and rope which ran down the side of the boom to a winch. At the end of the rope was a hook. The boom went around to cargo on a lighter, a load was lifted from the lighter to the deck of the ship, and then lifted therefrom into the hold. When the load had been thus stored away, a sling was put on the hook, and one servant would swing the hook to another servant called "the gangwayman." On the occasion of the accident this hook caught a beam of the between-deck hatch and lifted it from its sockets so that it fell into the hold and upon the intestate. The contention of the plaintiff is that the defendant was negligent in failure to provide a safe place to work, safe and proper ways, works, and machinery, in lack of superintendence and of inspection, in that it permitted the beam to remain in its sockets without being securely or properly fastened. The plaintiff's case developed as the feature of negligence that the beam was not bolted into its place, although its construction provided such security. It is my personal opinion that the learned court erred capitally in its disposition of this request for instruction of the jury:

"The defendant and its agents were not bound to anticipate that the cross-hatch beam would be lifted out of its position."

The learned counsel for the plaintiff objected to the request on the ground that it was "a question of fact." The court refused it under exception and without comment. This absolute refusal by the court suffered the jury to infer logically from the last words of the court on this specific subject that the defendant and its agents were bound to foresee that the cross-hatch beam would be lifted out of its position. The beam was the thwartship beam, made of iron, weighed 900 pounds, and rested in sockets. It may be assumed that when the vessel rode at anchor at dockside this beam could not readily be disturbed by chance from its place. This work was doing under similar conditions for four days, one-half of the time on one side of this beam and one-

half on the other, for the beam exactly divided the hatch. The half hatch in use was 12 feet by 18 feet. One-half of the hatch on the top deck was covered over at the time. This indicates that the beam was on the extreme side of the half of the hatch that was in use.

Plaintiff's witness Rourke, the gangwayman, testifies with reference to the fellow servant whose duty it was to "throw" or to swing the hook to him, he "threw this hook toward me, and in place of throwing it towards me, he threw it in a slanting direction." "The beam would lay right between both of us, but to one side, and there would be a space of 12 feet, running from the beam to the aft end of the hatch, and 18 feet across, and the fellow apparently intended to throw the hook across the eighteen feet, * * * or a portion of it, towards me, when in fact he threw it to the side; * * * and it caught under the upper flange, the upper flange of this beam, and the beam came out." There is no proof of any similar accident, or even of a similar engagement, and there is no suggestion that the method of work was unsafe. The obligation of law put upon the defendant was too great. In any event, assuming but not deciding that the proof was sufficient to indicate both that the beam was not bolted, and that the defendant was chargeable with that condition, the question was whether the defendant, in the exercise of due care, should have foreseen that the beam under that condition might be disturbed from its place by this work so as to endanger life or limb.